UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **RODNEY PEARSON** § | |
| *Plaintiff,* § | |
| VS. § | **CIVIL ACTION NO.** |
| § | |
| **STRUCTURE ROOF & WALL** § | |
| **SOLUTIONS, INC.,** § | |
| **CHAMPION EXTERIOR** § | |
| **SOLUTIONS, LLC, PATRICK** § | **JURY TRIAL DEMANDED** |
| **MURRELL, AND ROBERT** § | |
| **KEPLINGER** § | |
| *Defendants,* § | |
| § | |

## ORIGINAL COMPLAINT

Plaintiff Rodney Pearson files this Complaint alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., against Structure Roof & Wall Solutions, Inc., and additional violations of Texas law against other defendants, and alleged below:

### I.   JURISDICTION AND VENUE

1. This action alleges the violation of rights under the Fair Labor Standards Act (hereafter "FLSA"). Thus, the predominant action herein gives rise to the jurisdiction in this Court pursuant to 28 U.S.C §1331. Furthermore, there exist additional state causes of action that arise out of the same transaction or occurrence as the underlying federal cause of action, and this Court has ancillary jurisdiction over these counts pursuant to 28 U.S.C. §1367.

2. The Court has personal jurisdiction over defendants who are corporations licensed to do business, and doing business, in the Southern District of Texas with their principal place of business in the State of Texas and individuals who reside in the State of Texas. A substantial part of the events or omissions giving rise to the instant lawsuit occurred within the Southern District of Texas. Venue lies in this court over these claims pursuant to 28 U.S.C. § 1391 (b)(1) and (b)(2). Additionally, the amount in controversy satisfies the jurisdictional limits of this Court.

1

## II.     PARTIES

3.      Rodney Pearson, Plaintiff, is a citizen of the full age of majority in the United States of America who resides in the Southern District of Texas.  Rodney Pearson is a former employee of Defendant, Structure Roof & Wall Solutions, Inc., and seeks to assert his claims pursuant to 29 U.S.C. § 201, *et seq.*

4.      Defendant Structure Roof & Wall Solutions, Inc., is a Texas corporation with its principal place of business in the Southern District of Texas, is subject to the FLSA, and may be served through its registered agent, Patrick Murrell at 19511 Wied Road, Suite A, Spring, Texas 77388.

5.      Defendant Champion Exterior Solutions, LLC is a Texas corporation with its principal place of business in the Southern District of Texas and may be served through its registered agent, The Law Office of Murphy and Associates at 25511 Budde Road, Suite 1102, The Woodlands, Texas 77380.

6.      Patrick Murrell is an individual and a citizen of the State of Texas.  He may be served by personal service at his address of 19511 Wied Road, Suite A, Spring, Texas 77388.

7.      Robert Keplinger is an individual and a citizen of the State of Texas.  He may be served by personal services at his business address of 2202 Timberloch Place, Suite 105, The Woodlands, Texas 77380.

8.      Whenever it is alleged in this Complaint that Defendant Structure Roof & Wall Solutions, Inc. committed any act or omission, it is meant that Structure's officers, directors, vice-principals, agents, servants, or employees committed such act or omission, and that at the time such act or omission was committed, it was done with the full authorization, ratification, or approval of Structure or was done in the routine normal course and scope of employment of Structure's officers, directors, vice-principals, agents, servants, employees.

### III.        FACTUAL BACKGROUND

9. In 2018, Defendant Patrick Murrell initiated discussions with Pearson regarding opening a new business as a Historical Underutilized Business ("HUB"). After Pearson agreed, he and Defendant Murrell hired the Law Offices of Murphy & Associates for the creation and formation of the HUB Corp —Champion Exterior Solutions, LLC —, and completion of the application, obtaining HUB certification through the application process, among other services.

10. Murrell insisted that Pearson put up all the funds for the creation of the HUB corporation and on January 26, 2018, Attorney David Murphy requested $3,325 to begin the process. On January 28, 2019, Mr. Pearson wrote check #0101 to David Murphy in the amount of $3,325.00 with memo "Corp paperwork."

11. On February 7, 2019, a Certificate of Formation Limited Liability Company was filed in the Office of the Secretary of State of Texas in the name of Champion Exterior Solutions, L.L.C. The Certificate of Formation listed Patrick Murrell as the initial registered agent as well as Manager in Article 3 – Governing Authority. Sean Buckley with the Law Offices of Murphy & Assocs. was shown as the organizer. On June 21, 2019, a Certificate of Amendment was filed with the Office of the Secretary of State of Texas listing the Law Offices of Murphy & Associates, PLLC as the registered agent for Champion and under Article 3 – Governing Authority, the names of Charlotte Murrell and Rodney Pearson were added to that of Patrick Murrell. Execution of this document is dated 06/20/2019 signed by Patrick Murrell as manager.

12. On November 28, 2019, Mr. and Mrs. Murrell and Mr. Pearson signed the "Third Amended Operating Agreement" of Champion Exterior Solutions, L.L.C. Pursuant to this "Third Amended Operating Agreement," Mr. Pearson was allocated 40% of ownership.

13. During the HUB application process, Mr. Pearson was advised that he could not maintain his current employment while at the same time applying for HUB status for Champion. As a result, Defendant Murrell agreed to hire Pearson in April 2019 to work at Defendant Murrell's other company — Structure Roof & Wall Solutions, Inc.

14. Pearson was hired by Structure initially with the title Human Resources and Safety Manager. Pearson expected and was told he would perform the functions of a Human Resources manager, for the salary of $1,000.00 per week.

15. Almost immediately after his hiring he was directed to perform manual labor as a non-exempt employee.

16. Pearson's instructed duties as a manual laborer were physically demanding and often required transporting of equipment materials and personnel over long distances from roofing job to roofing job. Pearson was required to travel all over the country at all hours of the night if Structure's business needs dictated to deliver personnel and materials.

17. Pearson's instructed duties also involved roofing duties such as washing, grinding, lifting, stooping, coating etc.

18. Pearson's employment as a roofer did not require Pearson to have or maintain any professional licenses, nor did Pearson require any certification, instruction, or courses in any particular field for roofing employment.

19. Pearson has no specialized degrees or coursework instruction of any kind related to roofing.

20. While working as a roofer for Structure, Pearson did not not have the authority to hire and/or fire other employees. He took his instructions from either Defendant Murrell or the particular job foreman.

21. Pearson had no personnel duties during his employment with Structure except in title only. He was not asked to handle human resource tasks, such as policy making, hiring, benefit analysis, employee discipline or termination. Instead, all of the business decisions made by Defendant Murrell were made on the direction of Defendant Keplinger, his "business" or "life coach."

22. Pearson has no duties related to creating, implementing, enforcing, or altering any contracts, policies, practices, or procedures of Structure. Conversely, at all times as an employee Pearson was expected to comply with all contracts, policies, procedures, rules, regulations, guidelines, schedules, and/or other requirements set forth, or adopted, by Structure. At times he was asked to type up policy manuals for Defendant Murrell's approval, but he had no authority to approve or implement.

23. Pearson had no control over any employees' hours worked or pay received.

24. Pearson transported employees and materials and various roofing jobs as directed by Structure's owner or other employees.

25. Pearson had no authority to approve, and did not approve roofing specifications, bids for jobs or personnel decisions.

26. Pearson received instructions from Defendant Murrell or job foreman such as Jimmy Thacker or Drake Roettger, who all controlled the number of hours Pearson worked. Murrell controlled the rate and the method of Pearson's payment.

27. Pearson routinely worked far beyond forty hours per week. He typically worked 60 to 70 hours per week.

28. Pearson, on more than one occasion, discussed with Defendant Murrell regarding the physical and mental stressors of the employment and the need for more roofers and/or less hours worked. Indeed, on July 12, 2019 Pearson was treated for heat exhaustion.

29. Structure's refusal to hire additional employees resulted in significant amounts of unpaid overtime hours, sleep deprivation, fatigue, and several other medical conditions.

30. Despite Pearson's efforts, or the efforts of any co-workers, Pearson continued to work well beyond forty hours per week under difficult and unreasonable conditions at Structure.

31. Pearson on more than one occasion, discussed with Defendant Murrell the demanding hours and overtime wages owed. Defendant Murrell admitted to Pearson that he was being treated unfairly, referred to Pearson as his "slave," but told Pearson that it would somehow all be made up to him through Champion – a company that Pearson was supposed to be a part owner.

32. As a non-exempt employee, Pearson was entitled to overtime pay. No exemption excused Structure from paying Pearson overtime for the overtime hours he worked.

33. Structure knew of its requirements to abide by the FLSA and were specifically made aware by Pearson's reporting and did not make a good faith effort to address its illegal pattern or practice and comply with the FLSA.

34. Structure knowingly, willfully, or with reckless disregard, carried out its illegal pattern or practice regarding overtime compensation and the payment of wages to Pearson.

35. Structure has never paid Pearson any overtime for hours worked in excess of forty hours in a workweek throughout his employment.

36. The physical demands and stress caused by the abusive workloads and intolerable conditions caused Pearson to seek medical attention.

37. On Friday, April 17, 2020 – Mr. Pearson was instructed to come to Defendant Murrell's office. When he arrived, he was met by Defendant Murrell and Defendant Keplinger. Defendant Keplinger informed Pearson that if he wanted the return of the monies he had previously contributed into Champion and if he wanted to receive $8,000.00 in severance pay from Structure,

6

Pearson had to sign both the Company Dissolution Agreement (Champion) and the Severance Agreement and Release of Claims (Structure).  Pearson was given to 5:00 p.m. on Monday, April 20 to sign both documents or both offers would be withdrawn.  The document entitled Company Dissolution Agreement contained language of an effective date of April 16, 2020 (Dissolution Date).

38. On or about May 4, 2020, after his employment terminated, Pearson sent a letter to his former employer, Structure, through his counsel, requesting all of his owed wages and overtime.  No response to his request has been received except an email promising documents which were never received.

## IV. COVERAGE UNDER THE FLSA

39. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

40. At all times hereinafter mentioned, Structure has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203.

41. At all times hereinafter mentioned, Structure has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203 (r).

42. At all times hereinafter mentioned, Structure has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

43. At all times hereinafter mentioned, Plaintiff was an employee engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

## V. FEDERAL COUNTS
### VIOLATIONS OF THE FLSA

44. Plaintiff incorporates by reference and re-allege each and every allegation contained above as though fully set forth herein.

45. Structure, and its representatives, directed the means and manner in which Pearson was compensated. During the relevant time period, Structure violated the provisions of the FLSA by employing employees engaged in commerce within the meaning of FLSA for workweeks longer than 40 hours without compensating such employees at rates no less than one and one-half the regular rates for which they were employed.

46. Structure's failure to properly pay Pearson was done so knowingly, willfully or in reckless disregard in carrying out its illegal pattern or practice. The decision by Structure not to properly pay overtime compensation to Pearson for a year was neither reasonable, nor in good faith. Accordingly, Pearson is entitled to wages under the FLSA in an amount equal to one and one-half times his rate of pay, plus liquidated damages, attorney's fees, and costs.

47. Pearson's work does not fall within any exemption of the FLSA and was required to be paid according to the dictates of that section.

### UNJUST ENRICHMENT and DEMAND FOR AN ACCOUNTTING

48. Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

49. Structure's actions in withholding monies from Pearson's paychecks, which Pearson was owed, amounts to their unjust enrichment under Texas Law. Moreover, Murrell and Keplinger's attempts to force Pearson to relinquish his 40% ownership of Champion in order to

receive severance was improper and unlawful. Pearson demands a full financial accounting as he is entitled to under the law. TEX. BUS ORG. CODE. § 101.109.

50. As a direct and proximate result of the acts alleged herein, Structure wrongfully deprived Pearson of substantial assets and were unjustly enriched by their direct receipt and retention of monies earned by Pearson for overtime, and which were required to be paid towards his hourly wage.

### FAILURE TO PAY WAGES UNDER TEX. LAB. CODE § 61.014

51. Plaintiff incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

52. Upon termination of Pearson's employment, Structure failed to pay all due wages.

53. Structure was required to remit all of Pearson's wages within six (6) days of termination of his employment. Letters demanding said wages never received any response.

54. This complaint serves as a third demand for Structure to remit all due wages to those whose employment has been terminated. Additionally, penalty wages and attorneys' fees continue to accrue for Structure's failure to pay said wages pursuant Tex. Lab. Code § 61.014.

### CONSPIRACY

55. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

56. Defendants Keplinger, Murrell and Structure knew, agreed, and intended to conduct the following acts described above:

> Failure to pay Pearson overtime wages in violation of the FLSA;
>
> Refusal to provide an accounting to Pearson as a member of Champion:
>
> Termination of Pearson from Structure for refusal to conduct an illegal act.

57.     Each Defendant undertook an act as described above to further the conspiracy. Pearson was injured by the conspiracy in that he was denied overtime pay, was denied an accounting, and was terminated from his employment

## VII.     RELIEF SOUGHT

WHEREFORE, Pearson prays for a judgment against Defendants, Structure Roof & Wall Solutions, Inc, Champion Exterior Solutions, LLC, Patrick Murrell, and Robert Keplinger, as follows:

   a.   For an Order pursuant to Section 16(b) of the FLSA finding Structure liable for unpaid back wages due to Plaintiff and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff;

   b.   For an Order awarding Plaintiff, the costs of this action;

   c.   For an Order awarding Plaintiff attorneys' fees;

   d.   For an Order awarding Plaintiff unpaid and lost benefits and lost benefits and compensation, and past and future wages, in connection with the FLSA and state law violations;

   e.   For an Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law;

   f.   All compensatory and punitive damages as called for in the FLSA;

   g.   All relief and damages as allowed under applicable Texas Law as stated above including an accounting and loss of earning capacity, both past and future; and

   h.   For an Order granting such other and further relief as may be necessary and appropriate.

## VIII.     DEMAND FOR TRIAL BY JURY

58.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all questions of fact raised by this Complaint.

## XII.  PRAYER

WHEREFORE, Plaintiff respectfully request Defendants to be cited to appear and answer herein, and that upon final trial hereof, the Court award the relief request against Defendant.

Respectfully submitted,

**THE BERNSEN LAW FIRM**

*/s/ David E. Bernsen*

**David E. Bernsen**
Texas Bar No. 02217500
dbernsen@bernsenlaw.com
**Christine L. Stetson**
Texas Bar No. 00785047
cstetson@bernsenlaw.com
420 N. MLK, Jr. Pkwy
Beaumont, Texas 77701
409/212-9994 – Telephone
409/212-9411 – Facsimile

**ATTORNEYS FOR PLAINTIFF**

## NOTICE AND REQUEST FOR WAIVER

Plaintiff's counsel will send waiver forms pursuant to Federal Rule of Civil Procedure 4(d).